UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THOMAS W. REDDY, Plaintiff, | | MEMORANDUM & ORDER |
| -against- | | 2:22-cv-02596 (ENV) (SIL) |
| HOME DEPOT U.S.A., INC. and JOHN DOE, Defendants. | | |

VITALIANO, D.J.

On February 23, 2022, plaintiff Thomas Reddy commenced this action against defendant Home Depot U.S.A., Inc. ("Home Depot") and an unnamed John Doe, arising out of an altercation that took place between Reddy and a Home Depot employee after Reddy was accused of theft.[1] *See* Compl., Dkt. 1-1. Broadly construed, the complaint brings four claims: (1) false arrest, (2) assault, (3) negligence, and (4) defamation. Defendants moved for summary judgment on October 27, 2023. *See* Def.'s Mot., Dkt. 25. On January 7, 2026, Magistrate Judge Steven I. Locke issued a Report and Recommendation ("R&R") recommending that defendants' motion for summary

[1] Home Depot later properly removed the action to this Court on the basis of diversity of citizenship, since at the time of removal, the citizenship of a John Doe defendant is not considered in determining diversity, *see* 28 U.S.C. 1441(b)(1); *see also Agapov v. Negodaeva*, 93 F. Supp. 2d. 481, 483 n.1 (S.D.N.Y. 2000), and the remaining parties are diverse. *See* Notice of Removal, Dkt. 1. Because the statute of limitations has now run against the John Doe defendant, the action against John Doe is dismissed. *See* N.Y. C.P.L.R. § 215(3); *see also Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009) ("[w]here a plaintiff names 'John Doe' as a placeholder defendant . . . he generally is required to replace the placeholder with a named party within the applicable statute of limitations period."). Based on their diversity of citizenship, the Court retains subject matter jurisdiction over the remaining parties. *See* 28 U.S.C. § 1332.

judgment be granted in part and denied in part. *See* R&R, Dkt. 31, at 1. Home Depot filed timely written objections to the R&R on January 21, 2026. *See* Def.'s Objs., Dkt. 33. For the following reasons, the R&R is adopted as the opinion of the Court, and summary judgment is granted in part and denied in part.

Background[2]

A Home Depot store located at 1101 Sunrise Highway, in Copiague, Long Island provided the stage for the events of March 14, 2021, that would culminate in this lawsuit. Rule 56.1 Stmt. ¶ 1. According to Reddy, he made a return trip to Home Depot that day to exchange a defective Ryobi grinder that he had bought earlier that same day. Affirmation of Glenn Auletta ("Auletta Affirm."), Ex. 1, Dkt. 26-1 ("Reddy Dep.") at 77:10–80:18.[3] As Reddy tells it, he went to customer service carrying the defective grinder, told them he wanted to do an exchange, then went to the power tool aisle and got another grinder of the same make and model. *Id.* at 82:15–87:23. Reddy then returned to customer service, where a Home Depot employee processed the exchange, took the defective grinder, and issued him a receipt. *Id.* at 92:4–93:2. Reddy returned to the power tool aisle to briefly look at other models, then walked toward the exit carrying the new grinder, where he was stopped by a Home Depot employee. *Id.* at 94:14–95:22. The curtain falls here on what could only be described as a typical shopping experience.

The next act hosts the altercation. Reddy says the employee who stopped him called him

---

[2] The facts are drawn from the parties' affidavits, exhibits, Rule 56.1 statements and counterstatements of fact and are undisputed unless otherwise noted. *See, e.g.*, Def.'s Rule 56.1 Stmt., Dkt. 25-11; Pl.'s Rule 56.1 Stmt., Dkt. 26-11. Where facts are disputed, "the sources for the claims made in dueling Rule 56.1 Statements" are considered directly. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 396 (S.D.N.Y. 2015).

[3] All citations to page numbers refer to the Electronic Case Filing System ("ECF") pagination, except that citations to a deposition reference the internal document's pagination.

a thief and accused him of stealing the grinder, despite Reddy attempting to show him the receipt, and that the employee grabbed his arm and told Reddy he was going to take him with him. *Id.* at 96:25–103:15. According to the employee, Reddy got angry and "put [his] finger in his chest," and the employee stepped back and made contact with the wall of the store. *Id.* at 101:4–106:22. Reddy then left the store with the grinder. *Id.* at 106:22–108:16. Reddy concedes that he is no longer in possession of the original purchase receipt for the grinder, nor does he have the exchange receipt for the new grinder he says he received from the customer service representative at Home Depot. Pl.'s SOMF ¶ 13.

The Home Depot combatant in this fracas was Peter McQuade, an Asset Protection Specialist. Pl.'s Rule 56.1 Stmt. ¶ 2. He spins a different tale. McQuade claims he was conducting surveillance that day near the tool section, where grinders were displayed for sale. *Id.*; *see also* Auletta Affirm. Ex. 10, Dkt. 26-10 ("McQuade Dep.") at 32:19–33:19. McQuade saw Reddy looking at tools while holding a receipt in his hand, then take a Ryobi grinder and start to walk out of the store. *Id.* at 33:2–37:11. After Reddy passed all points of sale, McQuade asked him what he was doing, he claims, at which point, McQuade says, Reddy started yelling at him and grabbed him by the collar of his sweatshirt, lifting him off the ground and slamming him against the wall. *Id.* at 37:9–39:9. Reddy then left the store with the grinder. *Id.* at 39:9–42:4.

The confrontation between the two was captured on Home Depot surveillance footage—footage which, in part, contradicts the stories of both Reddy and McQuade. *See* Affirmation of Fahmida Islam ("Islam Affirm."), Ex. E, Dkt. 25-6 ("CCTV Footage"). The footage shows McQuade, wearing a red hoodie, standing with his back to Reddy. *See* Dkt. 25-6 ("CCTV Footage") at 0:00–0:05. Reddy walks behind McQuade toward the exit to the store, and McQuade turns and follows him past the checkout lines. *Id.* at 0:05–0:14. McQuade and Reddy exchange

words, as Reddy gesticulates with his arms. *Id.* at 0:14–0:29. Reddy reaches out and forcefully makes contact with McQuade's chest, then walks out into the parking lot. *Id.* at 0:29–0:34. McQuade follows Reddy outside, and after a further exchange of words, Reddy walks out of frame and McQuade reenters the store. *Id.* at 0:34–1:15. In other words, contrary to Reddy's testimony, McQuade did not grab his arm, or indeed, make contact with him at all. However, contrary to McQuade's testimony, Reddy did not lift him off the ground and pin him against the wall.

After Reddy's departure, McQuade reported the incident internally at Home Depot, *see* Auletta Affirm. Ex. 3 ("Incident Report"), Dkt. 26-3. This report memorialized in nearly identical fashion the same series of events: McQuade wrote that he "witnessed the subject select a drill and pass all [points of sale without] paying, so I approached him. Upon my approach, he got loud and ended up grabbing me by the collar, lifting me off the ground." *Id.* McQuade also provided a sworn statement to the Suffolk County Police Department ("SCPD"). *See* Auletta Affirm. Ex. 6 ("Police Report"), Ex. 6. Again, this statement laid out a narrative in which McQuade saw Reddy walk out of the store carrying a grinder past all points of sale, confronted him, and claims, as he related in his statement, Reddy "grabbed me by the collar of my sweatshirt to the point where he lifted me off the ground and slammed me against the wall at which point my head and neck hit the wall. The subject kept me pinned against the wall for about 5 to 10 seconds until he let me go." *Id.* McQuade requested that SCPD arrest Reddy, stating in his police report that he wanted the "subject that picked up me by the sweatshirt and slammed me against the wall causing me to hit my head and neck causing me substantial pain arrested. Also as an agent of Home Depot I want the white male subject arrested for not properly returning the item he brought into the store, taking a new one and leaving past all points of sale without properly exchanging or paying for the said item." *Id.*

SCPD charged Reddy with petit larceny and third degree assault with intent to cause bodily injury. Pl.'s Rule 56.1 Stmt. ¶ 10. These charges were based on McQuade's sworn statement to SCPD. *See* Islam Affirm. Ex. C ("SCPD Records") at 7–9. SCPD requested that Reddy surrender himself to be arrested, which he did on May 31, 2021. Pl.'s Rule 56.1 Stmt. ¶ 11. To close the loop, the arrest report establishes that Reddy was arrested based on McQuade's statements. *See* SCPD Records at 36. Upon his arrest, Reddy was interrogated in handcuffs for approximately three hours. *See* Reddy Dep. at 180:3–25. Reddy ultimately obtained an Adjournment in Contemplation of Dismissal of all charges. Pl.'s Rule 56.1 Stmt. ¶ 12. Seeking to parlay the dismissal of the criminal charges to win the award of civil damages, Reddy brought this lawsuit against Home Depot and a John Doe defendant, advancing two causes of action that allege various theories of liability. *See* Compl. ¶ 33. Magistrate Judge Locke construed the complaint to assert claims for false arrest, assault, negligence, and defamation, and the parties briefed the case on that basis. *See* R&R at 11–20; Dkt. 25-12. The R&R recommends denying defendants' motion for summary judgment on the false arrest claim, but granting summary judgment on the claims for assault, negligence, and defamation. *Id.*

## Legal Standards

When reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). However, if a party "fails to properly object to the R&R, the district judge reviews the R&R only for clear error." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025). Clear error exists "where, upon a review of the entire record, [the district judge] is left with the definite

and firm conviction that a mistake has been committed." *Saveria JFK, Inc. v. Flughafen Wien, AG*, No. 15-cv-6195, 2017 WL 1194656, at *2 (E.D.N.Y. Mar. 30, 2017).

Underscoring its concern regarding the state of practice of district court review of reports and recommendations under Rule 72, the Second Circuit has recently reiterated and expanded upon what it means to "'properly object' to an R&R." *Nambiar*, 158 F.4th at 359. First, "[a] proper objection must be timely." *Id.* Under Fed. R. Civ. P. 72, an objection must be filed within fourteen days of service of a copy of the R&R. *See* Fed. R. Civ. P. 72(b)(2). Under Second Circuit law, "[f]ailure to timely object may 'operate[] as a [forfeiture] of further judicial review' of the magistrate judge's decisions." *Nambiar*, 158 F.4th at 359 (alterations in original) (citation omitted). Not only must a proper objection be timely, it must be specific, meaning the objection must be articulated "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* (citation omitted). Thus a litigant "objecting to an R&R may not simply rest on the briefs considered by the magistrate judge; she must lodge a specific objection to some specific aspect of the R&R." *Id.* at 361. Finally, a "proper objection generally may not raise new arguments not previously made before the magistrate judge." *Id.* at 359. To that end, new "case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance" are generally not permitted in a proper objection. *Gov't Emps. Ins. Co. v. Galperin*, No. 23-cv-9241, 2025 WL 909190, at *1 (E.D.N.Y. Mar. 26, 2025).

Importantly, as part of its clarification of Rule 72 practices, the Second Circuit has held that when a timely objection "raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments *de novo*." *Nambiar*, 158 F.4th at 361. This represents a departure from "an approach that has gone unchecked for some years" in this circuit. *Id.* The circuit court observed that the district court in *Nambiar*—as had other district

courts in recent years—essentially "applied an additional qualification to the definition of a 'proper objection,' requiring that an objection may not reiterate to the district judge arguments already raised before the magistrate judge." *Id.* at 359-360. That preexisting approach, the Second Circuit reasoned, was "untenable" and "place[d] a litigant in an impossible position," because a litigant could not raise an argument for the first time in objections to an R&R but also could not raise an argument already presented. *Id.* at 360. Moreover, such an approach would impermissibly expand the magistrate judge's role beyond its proper Article III limits because "*de novo* review of those portions of the magistrate judge's report and findings to which a party timely objects is crucial to the constitutionality of the Federal Magistrate Act." *Id.* (quotation marks and citation omitted).

Therefore, "[w]here a litigant's objections take issue with a specific legal conclusion in the report and recommendation, they should be considered *de novo*, even if they repeat an argument raised before the magistrate judge." *Id.* (quotation marks and citation omitted). But "the remaining portions of the report as to which no objections were made are reviewed for clear error." *Id.* (citation omitted).

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of the City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). A dispute over material facts is "genuine" where "a reasonable jury could return a verdict for the nonmoving party" based on the evidence cited. *Anderson*, 477 U.S. at 248.

Assertions of fact made in connection with a motion for summary judgment must be supported by citations "to particular parts of materials in the record" that could be presented as admissible in evidence, which may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). With that standard in mind, the Court's job at this stage is not to try the facts but instead to merely "determine whether there *are* issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)). The movant carries the burden of demonstrating that there is no genuine dispute as to any material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the Court will resolve all ambiguities and draw all permissible factual inferences in the light most favorable to the party opposing the motion, *see Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589 (2d Cir. 2024). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997).

<u>Discussion</u>

The elements of false arrest under New York law are that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. *See Carruthers*

*v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025). A third party can be liable for the confinement effected by another if they "affirmatively procured or instigated the plaintiff's arrest." *King v. Crossland Sav. Bank*, 111 F.3d 251, 256 (2d Cir. 1997). "A third party is not held liable for false arrest by merely 'seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made.'" *Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 209 (S.D.N.Y. 2024) (quoting *Savarese v. City of New York*, 547 F. Supp. 3d 305, 340–41 (S.D.N.Y. 2021)).

But, the road that separates a third party who provides the police with the essential information that fuels the arrest of another party on criminal charges from civil liability if the arrest is found unlawful is narrow, winding, and lined with cautionary flags. Pointedly, where a plaintiff arrestee "can show that defendant instigated his arrest, thereby making the police agents in accomplishing defendant's intent to confine the plaintiff,'" civil liability can lurk. *TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 268–69 (E.D.N.Y. 2010) (quoting *Rateau v. City of New York*, No. 06-CV-4751 (KAM) (CLP), 2009 WL 3148765, at *6 (E.D.N.Y. Sept. 29, 2009)). Still, "even if a civilian complainant is ultimately incorrect in his belief as to whether a person is committing a crime, he need only have had a reasonable basis for this belief in order to have the probable cause necessary to defeat a . . . false arrest claim." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013). Therefore, a "complainant can be held liable for false arrest if the complainant intentionally provided false information to instigate an arrest by law-enforcement officials, or had no reasonable basis for the report." *Id.* (internal quotation marks and citation omitted); *see also Ndemenoh v. Boudreau*, No. 20-CV-4492, 2023 WL 6122852, at *10 (S.D.N.Y. Sept. 19, 2023). As a result, in determining the liability of a complainant to the police, that determination is critically dependent on what the complainant knew,

when he knew it, and what he intended when he related that information to the police.

Reddy's false arrest claim is based on two theories: the first is that McQuade himself confined him, and the second is that McQuade provided false information to the police with the intent to confine him. The first is meritless, because the CCTV Footage shows that McQuade did not confine Reddy. Indeed, McQuade did not even touch Reddy, and Reddy freely left the store after a confrontation that lasted around a minute. On the second theory, however, McQuade did in fact provide false information to the police: the claims in his sworn statement that Reddy "grabbed me by the collar of my sweatshirt to the point where he lifted me off the ground and slammed me against the wall at which point my head and neck hit the wall," and "kept me pinned against the wall for about 5 to 10 seconds until he let me go." *See* Police Report. A review of the CCTV footage shows that this simply did not take place; Home Depot's objections themselves refer to McQuade's statement as "arguably incorrect." *See* Def.'s Objs. at 3. Moreover, McQuade's police report establishes that he made the statements with the intent of having Reddy arrested, because he said, "I do want the white male subject that picked me up by my sweatshirt and slammed me against the wall causing me to hit my head and neck causing me substantial pain arrested." *See* Police Report. Because there is a factual issue as to whether the police relied on this false information in arresting Reddy, summary judgment for either side is inappropriate. *See Armatas v. Maroulleti*, No. 08-cv-310, 2010 WL 4340437, at *20 (E.D.N.Y. Oct. 19, 2010); *see also Brown v. Sears Roebuck*, 297 A.D.2d 205, 746 N.Y.S.2d 141 (2002).

Changing lenses, Home Depot objects on the basis that McQuade's other statements to SCPD independently gave them probable cause to arrest Reddy for petit larceny, regardless of whether they had a basis to arrest him for assault, and McQuade had a reasonable basis to believe that Reddy had committed petit larceny. Therefore, Home Depot argues, McQuade's false

statements regarding assault are immaterial, because "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); *see* Def.'s Objs. at 4. This is true as a general matter, but it elides the difference between false arrest claims *against* a police officer and false arrest claims against civilians furnishing information *to* police officers. Because SCPD had probable cause to arrest Reddy, a false arrest claim against them under section 1983 would fail, even if they lacked probable cause to arrest Reddy for a different charge. *See Davenport v. Cnty. of Suffolk*, No. 99-CV-3088 JFB, 2007 WL 608125, at *5 (E.D.N.Y. Feb. 23, 2007) (citing *Jaegly*, 439 F.3d at 154). But if the police developed probable cause to arrest Reddy based on false information given to them by McQuade, then a false arrest claim, even though it would simultaneously fail against SCPD, could lie against McQuade, and vicariously, Home Depot. *See Weintraub v. Bd. of Educ. of City of New York*, 423 F. Supp. 2d 38, 56 (E.D.N.Y. 2006) (citation omitted); *see also Rodriguez v. Sky, 605 W 42 St Owner LLC*, No. 23-CV-8034 (LTS), 2023 WL 7305147, at *4 (S.D.N.Y. Nov. 6, 2023). The unresolved issue is whether the false information was "relied upon to make the arrest." *Armatas*, 2010 WL 4340437, at *20; *see also Brown*, 297 A.D.2d at 210.

Home Depot interposes a second objection of a similar stripe. It argues that regardless of whether the report contained false information, the police would have had probable cause to arrest Reddy for assault based on the events that actually took place that day, because the CCTV Footage shows that Reddy forcibly made contact with McQuade's chest with both hands. *See* Def.'s Objs. at 6–7. Indeed, if accurately described to the police, Reddy's conduct that day may well have supported probable cause to arrest him for assault. But McQuade did not describe Reddy's conduct

accurately. The police records establish that the probable cause to arrest Reddy was based on McQuade's statement generally, and that statement contained information for which—whether it ultimately proved true or false—McQuade had a reasonable basis (that Reddy walked out of Home Depot with a grinder without paying for it). But it also contained information for which he did not have a reasonable basis. If the false information that McQuade gave to the police was not "necessary to the finding of probable cause," then Reddy has no claim for false arrest; if the police relied on the false information to develop the probable cause to arrest Reddy, then a reasonable jury could find for him. *See Anilao v. Spota*, 774 F. Supp. 2d 457, 511 (E.D.N.Y. 2011) (citation omitted). "The question thus raised is whether [the police] ultimately relied upon [the false statements] exclusively for a finding of probable cause. Although probable cause may have existed irrespective of [the false statements], there is a narrow question of fact concerning what information and/or statements [the police] relied upon in making their probable cause determination which prompted the arrest of [Reddy]." *See Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *15 (S.D.N.Y. Oct. 19, 2017). On that question of fact—whether the police relied on information for which McQuade had a reasonable basis in making their arrest—the Court denies summary judgment.

No other timely written objections were filed by any party to Judge Locke's R&R. Accordingly, "the remaining portions of the report as to which no objections were made are reviewed for clear error." *Nambiar*, 2025 WL 3007285, at *3–*4. On that basis, the Court concludes that Judge Locke's well-reasoned R&R recommending that summary judgment be entered on Reddy's assault, negligence, and defamation claims in favor of defendants is free of

any clear error.[4][5]

Conclusion

In line with the foregoing, defendants' objections are overruled and Magistrate Judge Steven I. Locke's R&R, as supplemented by this Memorandum and Order, is adopted in its entirety as the opinion of the Court. Defendants' motion for summary judgment is granted in part, but only to the extent indicated above.

The parties are referred to Magistrate Judge Locke for continued pretrial management of this case.

So Ordered.

Dated: Brooklyn, New York

November 3, 2026

*/s/ Eric N. Vitaliano*

ERIC N. VITALIANO

United States District Judge

[4] There also have been no objections to Magistrate Judge Locke's conclusion that Home Depot is vicariously liable for McQuade's conduct, because McQuade was acting in the scope of his employment during the altercation. *See A.W. by E.W. v. New York Dep't of Educ.*, 702 F. Supp. 3d 46, 52 (E.D.N.Y. 2023). This recommendation by Magistrate Judge Locke is also adopted.

[5] In his opposition to the motion for summary judgment, Reddy for the first time raised the theory that McQuade defamed him through his statements in the internal incident report he logged with Home Depot. However, it is well-settled that a party may not raise new claims or theories of liability for the first time in opposition to summary judgment. *See Gracie Baked LLC v. GiftRocket, Inc.*, No. 22-CV-04019 (GRB) (VMS), 2025 WL 3706651, at *5 (E.D.N.Y. Dec. 22, 2025) (collecting cases). Accordingly, because it was raised for the first time in his opposition to the motion for summary judgment, the Court will not consider a theory of defamation based on the Home Depot incident report.